[REDACTED]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RECEIVED

SEP 2 5 2008

AT 8:30_____M
WILLIAM T. WALSH
CLERK

| | |
|---|---|
| OSTEOTECH, INC., | |
| Plaintiff, | Civil Action No. 3:06-cv-04249-FLW |
| v. | |
| REGENERATION TECHNOLOGIES, INC., | |
| Defendant. | OPINION |

### WOLFSON, United States District Judge

Presently before the Court is a Motion for Partial Summary Judgment by Defendant Regeneration Technologies, Inc., to limit pre-suit damages, in connection with Plaintiff Osteotech's claim that Defendant has and continues to infringe upon one of Plaintiff's patents, U.S. Patent No. 5,333,626, in violation of 35 U.S.C. § 271. The Court has reviewed the moving, opposition, and reply papers,[1] and for the reasons set forth below, Defendant's Motion for Partial Summary Judgment is granted.

---

[1] The Court notes that Plaintiff did not originally address the effect of the non-disclosure agreement in its opposition papers. On a conference call with both parties held on September 12, 2008, this Court permitted both parties to submit additional briefing by letter regarding the effect of the parties' non-disclosure agreement for the consideration of this Motion. Those submissions have been considered, as well.

1

## I. BACKGROUND

On August 2, 1994, Cryolife, Inc. was issued a patent, U.S. Patent No. 5,333,626 ("626 patent"), for the "preparation of bone for transplantation." Certification of Sandra A. Frantzen ("Frantzen Certif."), Ex. 2, U.S. Patent No. 5,333,626. The 626 patent was assigned in its entirety to Plaintiff on July 13, 1995, and since then, Plaintiff has been the exclusive owner of the 626 patent. Frantzen Certif., Ex. 10, Licensing Agreement. In connection with the 626 patent and another patent held by Plaintiff, U.S. Patent No. 5,513,662 ("662 patent"),[2] Plaintiff filed suit against LifeNet Health, Inc. ("LifeNet") on March 10, 1997 for patent infringement. Id. On November 25, 1997, Plaintiff and LifeNet settled the litigation by entering into a licensing agreement. Frantzen Certif., Ex. 10, Licensing Agreement; (Def.'s Fact St. ¶ 3; Pl's Fact St. ¶ 3).

---

[2]The 662 patent was issued to Plaintiff on May 7, 1996. Declaration of Heather D. Redmond ("Redmond Decl."), Ex. A, U.S. Patent No. 5,513,662.

Defendant developed the BioCleanse process which it claims is "the only proven sterilization technology that eliminates viruses, bacteria, fungi and spores from tissue without compromising the biocompatibility and structural properties of the biologic implant." Frantzen Certif., Ex. 26, RTI Profile. On November 13, 1998, Defendant filed a patent application for the BioCleanse technology, which was approved by the United States Patent Office on November 19, 2002. Frantzen Certif., Ex. 25, BioCleanse Patent Application. In addition, Defendant has been distributing BioCleanse bone tissue since 1999. Id.

On March 22, 2004, Plaintiff sent a letter to Defendant. After several back-and-forth exchanges, both parties entered into a Confidential Disclosure Agreement to facilitate communication in order to negotiate a possible settlement of Plaintiff's claims. Frantzen Certif.,

---

3

Ex. 37, Confidential Disclosure Agreement. The Confidential Disclosure Agreement, dated and signed April 1, 2005, states, in pertinent part, that:

> All past, current, and future discussions and communications between the Parties (including their respective counsel) related to Osteotech's claim or attempts to settle Osteotech's claim are confidential. No party may disclose or use the content of such discussions and communications for any purpose other than settlement of Osteotech's claim or to enforce or claim breach of this Agreement.

Id. Plaintiff and Defendant exchanged several other letters, including ones dated August 22, November 15, and December 7, 2005. Redmond Decl., Ex. C.

Plaintiff commenced this action on September 11, 2006. Initially, Plaintiff asserted both product and method claims against Defendant. In March 2007, Plaintiff served Defendant with interrogatories, one of which inquired as to why Defendant's Biocleanse process did not infringe certain Plaintiff's 626 patent claims: "Substantiate Your contention that You do not infringe claims, 1, 7-18, 24-32, 35-38, or 40-49 of the [626 patent]." Frantzen Certif., Ex. 5. Claims 8 and 18 of the 626 patent contain product claims, both of which Defendant refuted as infringed by Biocleanse in its supplemental interrogatory response. Id. However, at sometime not specified by either party,[4] Plaintiff withdrew its product claim and now proceeds only on its method claim against Defendant. On December 28, 2007, Defendant filed this motion for partial summary judgment to limit Plaintiff's claim for alleged damages based on a failure to comply with the patent marking statute. Subsequently, Plaintiff filed a motion to amend its Complaint on February 21, 2008. On May 9, 2008, United States Magistrate Judge Tonianne J. Bongiovanni granted Plaintiff's motion to amend its Complaint. Plaintiff filed an Amended Complaint and

---

[4] Defendant concedes that Plaintiff withdrew its product claim before this Motion was to be decided. Nonetheless, Defendant argues the withdrawal has no effect on the application of 35 U.S.C. 287(a). See infra, Discussion Part B.

4

demand for a jury trial on May 14, 2008.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. When the burden of proof at trial is on the non-moving party, as in the case at bar, the moving party can satisfy its initial burden by submitting evidence that negates an essential element of the non-moving party's claim, or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-movant's claim. Id. at 331.

Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir.1999). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party.

Anderson, 477 U.S. at 248. In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (citation omitted).

## III. DISCUSSION

### A. Confidentiality Agreement

Initially, Defendant asserts Plaintiff cannot introduce any communications between the parties before this action was commenced as it would violate the parties' Confidential Disclosure Agreement entered into on April 1, 2005. However, Plaintiff seeks to introduce these letters to show that Defendant was aware of Plaintiff's 626 and 662 patents and Defendant's possible patent infringement. Without these communications, Plaintiff would be unable to show Defendant had actual notice of possible patent infringement before the commencement of this action, precluding Plaintiff from seeking pre-suit damages pursuant to 35 U.S.C. § 287(a).

As a preliminary matter, a confidentiality agreement should be construed as a contract.[5] Medical Stores, Inc. v. AIG Claim Services, Inc., No. 02-80513, 2003 WL 25669175 (S.D.Fla. Oct. 17, 2003). Thus, general rules of contract construction apply. Under Florida law, when the contractual terms are clear and unambiguous, the plain meaning of the contract will govern the agreement. Hill v. Deering Bay Marina Ass'n, Inc., 985 So.2d 1162, 1166 (Fla. Dist. Ct. App. 2008). Moreover, "[i]t is well established that courts cannot rewrite the clear and unambiguous terms of a voluntary contract." Pol v. Pol, 705 So.2d 51, 53 (Fla. Dist. Ct. App. 1997); see also

---

[5]The agreement provides that it "shall be interpreted pursuant to the laws of the State of Florida." On a conference call with both parties and respective counsel held on September 12, 2008, neither party objected to this choice-of-law provision and agreed to stand by the terms of the agreement. Thus, the Court need not determine whether New Jersey law should be applied.

Anthony v. Anthony, 949 So.2d 226, 227 (Fla. Dist. Ct. App. 2007) (citation omitted) ("When a contract is clear and unambiguous, 'the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls.'"); Dows v. Nike, Inc., 846 So.2d 595, 601 (Fla. Dist. Ct. App. 2003).

In the case of an unambiguous contract, it is well settled that a court may only look within the four corners of the contract to discern the parties' intent. Emerald Pointe Property Owners' Ass'n, Inc. v. Commercial Construction Industries, 978 So.2d 873, 877 (Fla. Dist. Ct. App. 2008); Dows, 846 So.2d at 601. Additionally, a Florida Court of Appeals court recently elaborated on this construction principle:

> [T]o give the proper meaning to a specific contract provision a court must consider it in context of the entire contract. Stated another way, "an isolated sentence of a contract should not be construed alone, but it should be construed in connection with other provisions. . .to arrive at a reasonable construction to accomplish the intent and purpose of the parties." James v. Gulf Life Ins. Co., 66 So.2d 62, 62 (Fla. 1953).

Hand v. Grow Construction, Inc., 983 So.2d 684, 686 (Fla. Dist. Ct. App. 2008). An ambiguous contractual term is one "susceptible to more than one reasonable interpretation." Emerald, 978 So.2d at 877 (quoting Okeechobee Landfill, Inc. v. Republic Servs. Of Fla., Lt. P'ship, 931 So.2d 942, 945 (Fla. Dist. Ct. App. 2006)). Upon such a finding, a court may ascertain the intent of the parties through the use of extrinsic evidence. Id. at 878.

In the instant matter, Defendant argues the non-disclosure agreement covers letters Plaintiff has offered to illustrate Defendant had actual notice of potential patent infringement. Plaintiff asserts that Defendant's reading unreasonably extends the agreement's reach beyond the parties' intentions, that being to only exclude confidential information concerning Defendant's

Biocleanse process, denoted in the agreement as "BC Information." In addition, Plaintiff offers extrinsic evidence for this Court to consider in its interpretation of the agreement, including a letter from Defendant stating a non-disclosure agreement was necessary to allow for an open, honest exchange. However, Plaintiff does not argue that the terms of the agreement are vague or ambiguous, rather it argues this Court should consider the "huge intended consequences" that flow from Defendant's position. In the alternative, Plaintiff argues it can use the fact that prior communications between the parties occurred, specifically the March 22, 2004 letter, to establish Defendant received actual notice of alleged patent infringement.[6]

The agreement makes clear that previous letters exchanged between the two parties served as an impetus for a non-disclosure agreement:

> Whereas, RTI and Osteotech have exchanged letters date March 22, 2004, May 13, 2004, and July 22, 2004, relating to RTI's BioCleanse process and U.S. Patent No. 5,333,626 ("the 626 patent") and U.S. Patent No. 5,513,662 ("the 662 patent"). . . . Whereas, RTI and Osteotech wish to continue their discussions to settle Osteotech's claim and, in furtherance of those discussions . . .

Frantzen Certif., Ex. 37. The expansive breadth of the non-disclosure provision cannot be understated. The agreement bars the disclosure or use of "[a]ll past, current, and future discussions and communications between the Parties (including their respective counsel) related to Osteotech's claim or attempts to settle Osteotech's claim." Id.

Clearly, the communications Plaintiff wishes to disclose fall within the ambit of the agreement. Specifically, both parties listed previous communications, including the March 22nd and July 22nd letter, as examples of why a non-disclosure agreement was necessary. Plaintiff

---

[6]While Plaintiff may be correct in its assertion that it can introduce the fact that Defendant received letters dated March 22 and July 22, 2004, see Pl.'s Letter Brief, that acknowledgment is insufficient to constitute actual notice. See infra.

8

concedes that one purpose of the agreement was that "RTI and Osteotech wish to continue their discussions to settle Osteotech's claim." Pl.'s Letter Brief, pg. 2. Looking at the entire agreement, Defendant's interpretation does not contradict that purpose nor require a reading beyond the plain meaning of the terms "[a]ll past, current, and future discussions and communications between the Parties." Frantzen Certif., Ex. 37. Plaintiff argues that "communications" should be limited to BC information because the agreement makes references to this confidential information. However, the provision precluding use of such communications in and of itself does not limit the scope to BC information. See Id. Moreover, the agreement also makes references to the March 22nd letter, a letter that contained no confidential information. Id. Thus, when looking at the entire agreement, the plain meaning of "communications" would extend beyond the BC information to include past correspondences between the parties, including the March 22nd letter.

Plaintiff argues that interpreting this agreement to foreclose the use of communications for establishing actual notice will discourage settlement negotiations "by creating minefields with costs easily exceeding any benefit that might be gained through candid communications aimed at preventing or resolving litigation." Pl.'s Letter Brief, pg. 5. The Court disagrees. The Federal Circuit has noted that parties wishing to avoid the risk of costly litigation, such as a declaratory judgement action in a noninfringement suit, should negotiate and agree to "a suitable confidentiality agreement" to prevent disclosure of communications received during settlement negotiations. SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1375 n.1 (Fed. Cir. 2007); see also Victor G. Reiling Associates and Design Innovation, Inc. v. Fisher-Price, Inc., 407 F. Supp. 2d 401, 404 (D.Conn. 2006) (holding that "[i]n light of the strong public policy

favoring settements . . .and encouraging uninhibited settlement negotiations, the parties' confidentiality agreement will be enforced."). Plaintiff could have easily negotiated and agreed to a non-disclosure agreement that excluded communications that did not contain confidential information, i.e., a letter giving notice of possible patent infringement. Further, Plaintiff could have excluded past communications between the parties to allow itself the option of showing actual notice with the March 22nd and July 22nd letter or could have expressly stated that communications could be used for notice purposes. Instead, Plaintiff freely contracted away its right to utilize <u>any</u> communications in <u>any</u> manner, including use to demonstrate actual notice pursuant to 35 U.S.C. § 287(a).

In addition, both parties were represented by counsel in the negotiation and signing of the non-disclosure agreement. This Court notes that Plaintiff and its counsel are no strangers to patent infringement suits and the requisite proofs as Plaintiff filed a similar suit against LifeNet in 1997. As such, at the time Plaintiff entered into this non-disclosure agreement, Plaintiff and its counsel were aware of the agreement's terms and what it meant for the prospects of future litigation. Again, it is clear from the plain meaning of the provision that the parties intended <u>complete confidentiality</u> to necessitate open settlement negotiations. Accordingly, I find that Plaintiff may not introduce the contents of the letters between the parties as it would violate the parties' non-disclosure agreement entered into on April 1, 2005.

**B. Defendant's Compliance with 35 U.S.C. § 287(a)**

Defendant asserts Plaintiff is not entitled to pre-suit damages for failure to comply with § 287(a)'s notice requirement. Section 287(a) states, in relevant part, that:

> Patentees, and persons making, offering for sale, or selling within the United States

any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. <u>In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.</u>

35 U.S.C. § 287(a) (emphasis added). Thus, a patentee may only recover damages in an infringement suit to the extent they were accumulated after the alleged infringer was given proper notice. <u>American Medical Systems, Inc. v. Medical Engineering Corp.</u>, 6 F.3d 1523, 1535-36 (Fed. Cir. 1993); <u>Crown Packaging Tech, Inc. v. Rexam Beverage Can Co.</u>, 498 F. Supp. 2d 718, 724 (D.Del. 2007) ("The amount of damages a patentee may recover in an infringement suit is statutorily limited to acts of infringement that occurred after the patentee gave the alleged infringer notice of infringement."). The notice requirement ensures "that the accused infringer knew of the adverse patent and the alleged infringement during the period in which its liability accrues." <u>Gart v. Logitech</u>, 254 F.3d 1334, 1339 (Fed. Cir. 2001). Proper notice may be achieved in one of two ways.

One such way is constructive notice, whereby the patentee marks the patentee's products with the appropriate patent number. <u>Mosaid Techs, Inc. v. Samsung Electronics Co., Ltd.</u>, 362 F.Supp.2d 526, 555 (D.N.J. 2005). In addition, a patentee who wishes to put potential infringers on constructive notice must mark any licensee's products to comply with 287(a). <u>Id.</u> The marking requirement helps prevent innocent infringement while providing the public with notice that a product is patented. <u>Nike v. Wal-Mart Stores</u>, 138 F.3d 1437, 1443 (Fed. Cir. 1998). The

11

Federal Circuit has held that "[t]he patentee bears the burden of proving compliance [with the marking requirement] by a preponderance of evidence." Id.; see also Allen Engineering Corp. v. Bartell Industries, Inc., 299 F.3d 1336, 1356 (Fed. Cir. 2002). A patentee must be able to show that substantially all of its distributed products were properly marked and all marking "was substantially consistent and continuous." Nike, 138 F.3d at 1446. With respect to licensees, a patentee must make "reasonable efforts to ensure compliance with the marking requirements." Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111-12 (Fed. Cir. 1996).

In the instant matter, Plaintiff concedes that none of the products manufactured and distributed by LifeNet pursuant to the November 1997 licensing agreement[7] were appropriately marked. (Def.'s Fact St. ¶ 7; Pl's Fact St. ¶ 7). Nevertheless, Plaintiff argues that, since it has abandoned its product claims against Defendant, that obviates the need for compliance with the marking requirement. In fact, Plaintiff asserts that this Court "need not resolve any of the legal issues raised in RTI's motion" with respect to the marking requirement. Pl.'s Brief, pg. 7. The Court disagrees. While a patentee need not comply with the marking statute where its patent merely covers a method, Bandag, Inc. v. Gerrard Tire Co., Inc., 704 F.2d 1578, 1581 (Fed. Cir. 1983), nonetheless "where the patent contains both apparatus and method claims. . .to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a)." American Medical, 6 F.3d at 1538-39; see also Crown Packaging Tech., Inc. v. Rexam Beverage Can Co., 498 F. Supp. 2d 718, 728 (D.Del. 2007); Philips Electronics North

---

[7]Plaintiff does not manufacture or distribute any products under either the 626 or 662 patents.

America Corp. v. Contec Corp., 312 F. Supp. 2d 649, 651 (D.Del. 2004). In Philips, a patentee was precluded from seeking pre-suit damages in its patent infringement action when it failed to mark its patented remote controls even though it was only proceeding with a method claim in its cause of action. 312 F. Supp. 2d at 651.

Here, Defendant correctly points out that Plaintiff cannot evade the marking requirement by relinquishing its initial product claim at this stage. The 626 patent contains process and apparatus claims. The 626 patent application "relates to a method of processing bone for eventual transplantation" and the product of that method, "bone suitable for transplantation into a human produce according to the method of claim 1." Frantzen Certif., Ex. 2, 626 Patent Application. Like Philips, where the district court held that a patentee must mark any products distributed under a patent to collect pre-suit damages in a method claim, Plaintiff was obligated to ensure its licensees substantially complied with the marking requirement to preserve its right to pursue a method claim on its 626 patent. See Philips, 312 F. Supp. 2d at 651. Thus, Plaintiff would have had to comply with the marking provision of § 287(a) if the products were distributed under the 626 patent.

But, Plaintiff asserts no products were distributed under the 626 patent by it or any of its licensees or sublicensees. Plaintiff contends that § 287(a)'s notice requirement should not apply because LifeNet "understood that it was not licensed to use positive pressure, with a detergent or decontaminating agent, for the purpose of cleaning the internal matrix of large bone grafts, as set forth in the '626 patent." Brame Decl. ¶ 3. To buttress this claim, Plaintiff offers a declaration from a LifeNet vice president, Bud Brame, who states LifeNet's license was limited to a process that used negative pressure which was covered in the 662 patent, a patent not at issue in the

13

initial complaint. Id. ¶ 4.

Plaintiff argues "less than ambient pressure" is negative pressure, which was what LifeNet was authorized to use under the licensing agreement. Moreover, Plaintiff asserts that "negative pressure" is a feature of the 662, not the 626, patent. Thus, Plaintiff claims, no products were distributed by LifeNet or any sublicensee under the 626 patent, and as such, there was no obligation on any party for marking pursuant to § 287(a).

Further, Plaintiff alleged in its 1997 suit against LifeNet that LifeNet's use of "a <u>vacuum to the bone</u> to draw a solution through the bone in order to remove bone marrow from the bone . . .<u>infringes Claim 31 of the '626 patent</u>." Frantzen Certif., Ex. 28 (emphasis added). Defendant contends, and Plaintiff concedes, that a "'vacuum' creates negative, not positive pressure." Pl.'s Brief, pg. 5.

Plaintiff merely asserts in conclusory fashion that no products were distributed that needed to be marked. Moreover, it incorrectly places the burden on Defendant to produce evidence of Plaintiff's failure to enforce compliance with the marking requirement, when it is Plaintiff that must prove there was substantial compliance with the marking provision of § 287(a). Nike, 138 F.3d at 1443.

Plaintiff's only rebuttal to Defendant's evidence is Bud Brame's statement that LifeNet "understood" it was not to use *a* process covered in the 626 patent. However, Brame's statement does not contradict what has already been established by Defendant, that the negative pressure process used by LifeNet was a part of the 626 patent as LifeNet understood it. See infra, pg. 8.

Moreover, Plaintiff

concedes in its opposition to this Motion that a "vacuum" includes negative pressure, a claim it asserted against LifeNet in 1997 and then licensed to LifeNet. Therefore, I find that Plaintiff has failed to take reasonable efforts to ensure its licensee and sublicensees marked their products appropriately and as such, Plaintiff cannot avail itself of the marking provision of § 287(a).

Alternatively, a patentee may provide potential infringers with actual notice. The purpose of the actual notice requirement is two-fold: (1) it calls to the attention of the alleged infringer that there may be possible patent infringement; and (2) it promotes "amicable and early resolution of the potential dispute. Lans v. Digital Equipment Corp., 252 F.3d 1320, 1328 (Fed. Cir. 2001). In Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd., this court stated that, [a]ctual notice can take many forms, including sending a potential infringer a letter that charges a particular product with infringement of a specific patent or filing a patent infringement action." 362 F. Supp. 2d 526, 555 (D.N.J. 2005); see also SRI Int'l, Inc. v. Advanced Tech. Labs., Inc., 127 F.3d 1462, 1470 (Fed. Cir. 1997) ("Although there are numerous possible variations in form and content, the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer."). In order to satisfy § 287(a)'s notice requirement, a patentee need not threaten litigation or create a case of actual controversy pursuant to 28 U.S.C. § 2201. SRI Int'l, Inc., 127 F.3d at 1470. Conversely, notice sent to an alleged infringer of supposed patent infringement accompanied by a patentee's offer of a license or other settlement will satisfy the notice requirement of § 287(a). Id.

Section 287(a) requires the patentee to provide more than a general advisory to the alleged infringer of the existence of the patentee's patent. Amsted Industries Inc. v. Buckeye Steel

Castings Co., 24 F.3d 178, 187 (Fed. Cir. 1993). The Federal Circuit has determined that at the very least, a patentee's notice to an alleged infringer requires an affirmative, specific charge of infringement with respect to a particular product produced by the alleged infringer. Amsted, 24 F.3d at 187. In Amsted, the Federal Circuit determined a letter notifying companies of "Amsted's ownership of the patent and generally advis[ing] companies not to infringe" was insufficient to constitute notice pursuant to § 287(a). 24 F.3d at 187. The Court must look at all communications between the patentee and the alleged infringer to determine whether they constitute actual notice of infringement. Gart, 254 F.3d at 1347. Moreover, the Court must focus its attention towards "the action[s] of the patentee, not the knowledge of the infringer." Lans, 252 F.3d at 1327 (quoting Amsted, 24 F.3d at 187).

In the instant matter, Plaintiff asserts in its Complaint that Defendant "became aware of the '626 patent, at the latest, by means of a letter Osteotech sent it on March 22, 2004." Pl.'s Compl. ¶ 6. Although this may be true, Defendant's awareness of Plaintiff's 626 patent would not give rise to actual notice as defined by 287(a). See Amsted, 24 F.3d at 187. Thus, this Court is obligated to look to the contents of communications provided by Plaintiff in order to determine whether Defendant received actual notice of possible patent infringement from Plaintiff. Plaintiff points to the March 22, 2004 letter as actual notice of alleged infringement. As stated previously though, Plaintiff may not offer the contents of these letters for any purpose due to the parties' non-disclosure agreement. See supra. In the alternative, Plaintiff argues that the fact Defendant received a letter from Plaintiff on March 22, 2004 is sufficient to constitute actual notice. However, the simple fact that Defendant and Plaintiff were in correspondence on March 22, 2004 does not conclusively show the requisite actions on the part of the patentee to constitute actual

notice. The Federal Circuit has made clear that patentees must show an "affirmative charge" of alleged infringement to put an alleged infringer on notice. <u>Amsted</u>, 24 F.3d at 187. The fact that Defendant received a letter from Plaintiff does not rise to the level of such a charge. The letter, presumably, could have been an invitation to enter into a licensing agreement. Accordingly, Plaintiff can not show that Defendant received actual notice pursuant to 35 U.S.C. § 287(a).

## IV. CONCLUSION

Plaintiff is precluded from seeking pre-suit damages. Plaintiff's failure to raise an issue of material fact as to substantial compliance with the marking requirement imposed by 35 U.S.C. § 287(a) is fatal to Plaintiff's request for pre-suit damages in the instant matter. Furthermore, Plaintiff did not provide Defendant with actual notice of possible patent infringement until the commencement of this action. Accordingly, Defendant's motion for partial summary judgment to limit Plaintiff's claim for pre-suit damages is granted.